M HN

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL VANDERPLOEG, ) ) Plaintiff, ) ) v. ) ) VILLAGE OF MERRIONETTE PARK, ) DENNIS M. MAGEE, ) ROBERT F. STEVENS, ) RON HERVERNAN, ) HARRIET LENTZ, ) KELLY WHITE, JOHN DUFFY, ) TOM ECKERT, and JOHN BONNEMA, ) ) Defendant. ) | No. 06 C 5560 Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Michael Vanderploeg, brought suit against Defendant, the Village of Merrionette Park, in the Circuit Court of Cook County, Illinois, alleging a violation of his protected liberty interest under the Due Process Clause of the Fourteenth Amendment. Plaintiff alleges that he was not afforded due process before being terminated from his position as a part-time police officer for Defendant. Plaintiff seeks a hearing to clear his name before a final determination on his employment is made and reinstatement to his former position. Currently pending before this Court is Defendant Village of Merrionette Park's Motion for Summary Judgment.

## UNDISPUTED FACTS

Beginning in March 1990, Plaintiff Michael Vanderploeg was employed as a part-time police officer by Defendant, the Village of Merrionette Park ("the Village"). (Defendant's Statement of Facts at ¶ 2.) Plaintiff was subject to annual reappointment to his position, which was made at the end of April of each year. (Defendant's Statement of Facts at ¶ 3.) Plaintiff was also employed as a full-time Cook County deputy sheriff since 1991. (Defendant's Statement of Facts at ¶ 1.)

On the evening of February 11, 2005, Plaintiff was leaving the parking lot of a bar and night club located in the Village, having consumed three beers during the approximately two hours that he was there, when he struck another car with his personal vehicle. (Defendant's Statement of Facts at ¶¶ 4-6.) Plaintiff got out of his vehicle to inspect the damage. (Defendant's Statement of Facts at ¶ 7.) As Plaintiff was getting back in his vehicle, he was grabbed by a valet. (Defendant's Statement of Facts at ¶ 8.) Plaintiff shoved or pushed the valet away. (Defendant's Statement of Facts at ¶ 8.) The valet said he was going to call the police; but Plaintiff told the valet that since there was no damage, he was going to leave. (Defendant's Statement of Facts at ¶ 9.)

The following day, Plaintiff wrote a memorandum to Merrionette Park Chief of Police Robert Stevens regarding the incident. (Defendant's Statement of Facts at ¶ 10.) On February 21, 2005, Plaintiff met with Stevens to discuss the accident and his continued employment with the Village. (Defendant's Statement of Facts at ¶ 11.) Plaintiff agreed to meet with an alcohol counselor as a condition of his continued employment. (Defendant's Statement of Facts at ¶ 11.) In a letter of reprimand to Plaintiff, Stevens reported that he had been told that

Plaintiff pushed and threatened the valet before leaving the scene. (Defendant's Statement of Facts at ¶ 11.) Stevens' letter also reported that security guards at the bar had determined that Plaintiff had been drinking heavily and that he had been denied service by two bartenders. (Defendant's Statement of Facts at ¶ 11.)

As a condition of his continued employment, Plaintiff was required to provide proof that he sought counseling within two weeks of his February 21 meeting with Stevens. (Defendant's Statement of Facts at ¶ 12.) The parties dispute whether Plaintiff met this condition. (Defendant's Statement of Facts at ¶¶ 13, 14; Plaintiff's Reply to Defendant's Statement of Facts at ¶¶ 13, 14.)

On April 2, 2005, Plaintiff was involved in a second motor vehicle collision while driving his personal vehicle. (Defendant's Statement of Facts at ¶ 15.) Plaintiff struck the parked vehicle of Sergeant Pezzuto of the Village of Merrionette Park Police in the parking lot of a convenience store. (Defendant's Statement of Facts at ¶¶ 15, 16.) Prior to the collision, Plaintiff had consumed less than two beers at his home. (Defendant's Statement of Facts at ¶ 17.) After the accident, Plaintiff spoke to Sergeant Pezzuto and Officer Justin Rimovsky. (Defendant's Statement of Facts at ¶ 18.) During the conversation, Pezzuto noticed a strong odor of alcohol on Plaintiff's breath and person. (Defendant's Statement of Facts at ¶ 19.)

A few days after the second accident, Plaintiff again spoke with Chief Stevens. (Defendant's Statement of Facts at ¶ 20.) Following that conversation, Plaintiff was suspended from the Merrionette Police Department. (Defendant's Statement of Facts at ¶ 21.)

According to Village ordinances, Plaintiff could appeal his suspension to the Mayor. (Defendant's Statement of Facts at ¶22.) At the sole discretion of the Mayor, as the head of the

3

Board of Trustees, a disciplinary decision may be appealed and presented to the Mayor and the Board of Trustees for reconsideration. (Defendant's Statement of Facts at ¶ 22.) Plaintiff appealed his suspension; and on April 13, 2005, Plaintiff was informed that his request for an appeal of the discipline was denied by Mayor Dennis Magee. (Defendant's Statement of Facts at ¶ 23.) Plaintiff was also informed that he would not be reappointed to his position as a part-time police officer at the end of the month. (Defendant's Statement of Facts at ¶ 23.) Mayor Magee accepts the recommendations of department heads (in this case, the Police Chief) when it comes to reappointing employees. (Plaintiff's Statement of Facts at ¶ 44.) In this case, Magee based his decision not to recommend Plaintiff for reappointment based on what he was told by Chief Stevens. (Plaintiff's Statement of Facts at ¶ 41.)

Village ordinances prohibit off-duty police officers from being intoxicated in public and from engaging in any action which brings discredit upon the police department. (Defendant's Statement of Facts at ¶ 39). On April 23, 2005, Stevens spoke with Officer Rimovsky regarding his observations following the April 2 accident. (Defendant's Statement of Facts at ¶ 24.) Rimovsky stated that he smelled alcohol in Plaintiff's vehicle and that he observed Plaintiff was unsteady on his feet and relied on the vehicle to steady himself. (Defendant's Statement of Facts at ¶ 24.) Rimovsky stated that he believed that Plaintiff was intoxicated at the time of the accident. (Defendant's Statement of Facts at ¶ 24.)

On May 24, 2005, Plaintiff and his attorney met with the attorney for the Village, Mayor Magee and Chief Stevens to appeal the decision not to reappoint Plaintiff. (Defendant's Statement of Facts at ¶ 26.) During the meeting, Plaintiff's attorney questioned Stevens regarding Plaintiff's suspension and nonreappointment. (Defendant's Statement of Facts at ¶

4

27.) However, Plaintiff's attorney was unable to obtain answers to a number of questions asked of Stevens due to objections by the Village's attorney. (Plaintiff's Statement of Facts at ¶ 37.) Plaintiff did not have the opportunity to question anyone other than Stevens at the meeting. (Plaintiff's Statement of Facts at ¶ 38.)

Plaintiff was also questioned at the meeting. (Defendant's Statement of Facts at ¶ 28.) Plaintiff does not know if he could have called witnesses to testify on his behalf or if the officers who responded to the scene of the accident were requested to attend the meeting. (Defendant's Statement of Facts at ¶ 29.) Plaintiff presented hospital and accident investigation records to contradict the statements of the officers regarding his level of intoxication at the time of the April 2 accident. (Defendant's Statement of Facts at ¶ 30.) Plaintiff does not recall whether he was allowed to present his version of the events in a narrative fashion. (Defendant's Statement of Facts at ¶ 31.)

The parties dispute to what extent the Mayor Magee made any findings as a result of this meeting and whether the meeting should be characterized as a hearing. (See Defendant's Statement of Facts at ¶ 34; Plaintiff's Reply to Defendant's Statement of Facts at ¶ 34.) Magee wrote a letter to Plaintiff, in which he claimed to reach certain factual findings based on the evidence elicited at the May 24, 2005 meeting. (Plaintiff's Statement of Facts at ¶ 45.) No one testified under oath at the May 24, 2005 hearing. (Plaintiff's Statement of Facts at ¶ 47.) Magee never spoke with Officers Pezzuto and Rimovsky nor to anyone from the bar where the first accident occurred nor to the valet whom Plaintiff pushed or shoved. (Plaintiff's Statement of Facts at ¶¶ 48, 50, 51.) Nor did Mayor Magee speak with anyone from the organization that provided Plaintiff with alcoholism treatment. (Plaintiff's Statement of Facts at ¶ 50.)

5

Other than Mayor Magee, Plaintiff does not know of anyone else with whom Chief Stevens has communicated regarding the investigation, discipline or Plaintiff's alcohol use. (Defendant's Statement of Facts at ¶ 35.) Plaintiff cannot recall whether Mayor Magee has ever communicated to anyone that the Mayor believes that Plaintiff has a drinking problem. (Defendant's Statement of Facts at ¶ 36.) Plaintiff has not read any information in the newspapers about his discipline or nonreappointment. (Defendant's Statement of Facts at ¶ 37.) No one has ever approached Plaintiff to discuss the reasons he was not reappointed or disciplined. (Defendant's Statement of Facts at ¶ 37.) Following his past employment with Defendant, Plaintiff was hired by the Village of South Chicago Heights as a part-time officer. (Defendant's Statement of Facts at ¶ 38).

## LEGAL STANDARD

Summary judgment is appropriate under Rule 56(c) when no genuine issue of material fact exists or when, drawing all factual inferences in favor of the nonmoving party, no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Anderson*); *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992).

One of the "principal purposes" of awarding summary judgment is to "isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (*Celotex*). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court that there is no genuine issue of material fact, the non-

moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that a genuine issue of material fact exists and to show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson*, 477 U.S. at 254-56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

## ANALYSIS

Plaintiff alleges that he was terminated without a hearing and that he "has been accused of an act that is slanderous to his good name, reputation, honor and integrity" in violation of his rights under the Due Process Clause of the Fourteenth Amendment. Plaintiffs allegations can be categorized as a violation of his property interest, in that he was not given due process in the proceedings surrounding his termination and a violation of his liberty interest, in that he was not provided with an opportunity to clear his name after Defendant defamed his character.

### *Plaintiff's Property Interest*

The Supreme Court held, in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538 (1985) (*Loudermill*) that when a public employee has a property interest in his employment, the state cannot deprive them of this property without due process. To respect their employees' protected property interests, governmental employers must provide certain pretermination procedures, including an opportunity for the employee to tell his side of the story. *Wainscott v. Henry*, 315 F.3d 844, 852 (7th Cir. 2003).

The crux of this dispute is whether Plaintiff had a property interest in his continued employment. Defendant argues that Plaintiff did not have a property interest because he was

7

subject to annual reappointment each year. Plaintiff does not dispute that he was subject to annual reappointment. Nor does Plaintiff directly contest Defendant's characterization of the end of his employment with Defendant as first a suspension and then a decision not to reappoint him. However, throughout his brief in response to Defendant's motion, Plaintiff repeatedly states that he was "terminated."

To have a property interest in a benefit, a person must have "more than an abstract need or desire for it" and must have "more than a unilateral expectation of it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) (*Roth*). Instead, he must have "a legitimate claim of entitlement to it." *Roth*, 564 U.S. at 577. Property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Roth*, 546 U.S. at 577. Property interests in the employment context arise in two ways: by an "independent source such as state law securing certain benefits" or by a "clearly implied promise of continued employment." *Heck v. City of Freeport*, 985 F.2d 305, 310 (1993) (quoting *Shlay v. Montgomery*, 802 F.2d 918 (7th Cir. 1986)).

Here, Plaintiff has offered no evidence showing a property interest in continued employment with Defendant beyond Plaintiff's year-long term. Plaintiff has pointed to no contract, law, rule, regulation or promise that would in any way suggest that he possessed such a property interest. Rather, Plaintiff has admitted that he was subject to annual reappointment. Plaintiff's lone argument on this point is a citation to *Hudson v. City of Chicago*, 374 F.3d 554 (7th Cir. 2004) (*Hudson*), which Plaintiff argues stands for the proposition that a non-probationary police officer in Illinois has a property interest in his employment. However, in

*Hudson*, the officer's employment was governed by a statute that provided that the officer could only be terminated for cause. *See Hudson*, 374 F.3d at 556. Plaintiff cites no support for his contention that an officer subject to annual reappointment has a property interest in being reappointed.[1]

### Plaintiff's Liberty Interest

Plaintiff asserts that Defendant violated his protected liberty interest when someone associated with Defendant made slanderous statements about him, which prevented him from securing employment in another police force. Defendant argues that Plaintiff can offer no admissible evidence that anyone with final policy-making authority for Defendant made or ratified any defamatory statements about Plaintiff and, furthermore, that Plaintiff cannot show that any stigmatizing information about Plaintiff was publically disclosed by Defendant. Defendant also argues that Plaintiff cannot show that he suffered a loss of other employment opportunities as a result of any publicly disclosed defamatory statements. Finally, Defendant argues that even if Plaintiff was entitled to a name-clearing hearing, Defendant has already provided him with it.

For a municipality to be held liable under § 1983, the violation of the plaintiff's rights must result from "(1) an express municipal policy; (2) a widespread practice constituting custom

---

[1] There is ambiguity as to whether Plaintiff asserts a liberty interest, a property interest, or both. In his Complaint, Plaintiff asserts a liberty interest but does not specifically assert a property interest. A motion to dismiss was previously briefed and ruled upon on the basis that Plaintiff asserted a liberty interest. Plaintiff, in his response to Defendant's motion for summary judgment, now claims that his primary allegation is the deprivation of his property interest and that the deprivation of his liberty interest is only "an ancillary issue." Defendant, in its reply, argues in response to Plaintiff's newly clarified claims. Plaintiff was given an opportunity to respond to these arguments but has chosen not to do so.

9

or usage; or (3) a constitutional injury caused or ratified by a person with final policy-making authority." *Simmons v. Chicago Bd. of Educ.*, 289 F.3d 488, 494 (2002) (*Simmons*). Here, Plaintiff has not alleged that his rights were violated by either a municipal policy or a widespread practice. Thus, to succeed on his claim, Plaintiff must show that the constitutional injury was caused or ratified by a person with final policy-making authority for Defendant.

The Seventh Circuit has held that "state employees have a liberty interest in not being discharged from their employment while being defamed such that they cannot get other government employment." *Strasburger v. Board of Educ., Hardin County Community Unit School Dist.*, 143 F.3d 351, 356 (7th Cir. 1998). To state a claim for a deprivation of liberty interest by a government employer, a plaintiff must show that "(1) he was stigmatized by the defendant's conduct, (2) the stigmatizing information was publicly disclosed and (3) he suffered a tangible loss of other employment opportunities as a result of public disclosure." *Townsend v. Vallas*, 256 F.3d 661, 669-70 (7th Cir. 2001) (*Townsend*) (citing *Head v. Chicago Sch. Reform Bd. of Trustees*, 225 F.3d 794, 801 (7th Cir.2000)). A plaintiff must show that his "good name, reputation, honor or integrity [has been] called into question in a manner that makes it virtually impossible for [the plaintiff] to find new employment in his chosen field. *Townsend*, 256 F.3d at 670.

A municipality cannot be held liable under § 1983 on the basis of *respondeat superior*. *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658, 691 (1978). Rather, in cases such as this, where the plaintiff does not allege that the violation is due to an express policy or widespread practice, the violation must be caused or ratified by a person with final policy-making authority. *See Simmons*, 289 F.3d at 494. Defendant argues that only Mayor Magee has

10

final policy-making authority for Defendant. Plaintiff argues that Police Chief Stevens also has such authority.[2] Chief Stevens' status as a final policy-maker need not be decided, however, because Plaintiff has identified no admissible evidence that either Mayor Magee or Chief Stevens publicly disclosed any stigmatizing information regarding Plaintiff. Plaintiff admits in his response to Defendant's Motion for Summary Judgment that "Plaintiff never alleged . . . that Defendants had publicly disclosed defamatory information/misinformation." Rather, Plaintiff's allegations of defamation are limited to the contention that "someone at Merrionette Park" told the Chief of Police at the Crestwood Police Department that Plaintiff was an alcoholic. Plaintiff has identified no admissible evidence in support of this contention. Plaintiff testified at his deposition that Officer Rimovsky told him that the Police Chief of Crestwood had told Rimovsky that he did not hire Plaintiff because an unidentified person at Merrionette Park had told him that Plaintiff had a drinking problem. At the summary judgment stage of these proceedings, Plaintiff cannot rely on this multiple layered hearsay to sustain his claim. *See Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (1997) ("hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial").

Furthermore, Plaintiff has clearly not shown that any defamation on the part of Defendant has made it "virtually impossible . . . to find new employment in his chosen field." *Townsend*, 256 F.3d at 670. It is undisputed that Plaintiff was hired by the Village of South Chicago

---

[2]Plaintiff cites *Eversole v. Steele*, 59 F.3d 710 (7th Cir. 1995) (*Eversole*), in support of his position that a police chief is a final policy-maker. However, in identifying a municipality's final policy-maker, courts look to the law of the state in which the municipality is located. *Radic v. Chicago Transit Auth.*, 73 F.3d 159, 161 (7th Cir. 1996). *Eversole* dealt with Indiana law. *Eversole*, 59 F.3d at 716. However, under Illinois law, which is applicable here, police chiefs are not necessarily final policy-makers. *See Auriemma v. Rice*, 957 F.2d 397 (7th Cir. 1992); *Watt v. City of Highland Park*, 2005 WL 2304790 (N.D. Ill. 2005).

Heights as a part-time officer, after leaving his employment with the Village, and that he remains employed as a deputy at the Cook County Sheriff's Department. Because Plaintiff cannot establish that he suffered any violation of his liberty interest, it is unnecessary to determine whether the hearing held by Defendant would have been sufficient to remedy any violation.

## CONCLUSION

Plaintiff has failed to offer any evidence or argument towards showing that he had a property interest in being reappointed to his position as a part-time officer for the Village. Plaintiff has also failed to offer any admissible evidence suggesting that he was defamed by Defendant or that he suffered any harm to his liberty interest as a result. Therefore, Defendant's Motion for Summary Judgment is granted.

Dated: March 4, 2008

JOHN W. DARRAH
United States District Court Judge